**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| General Parts Distribution LLC d/b/a Carquest Auto Parts and General Parts, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Jennison Perry, <br> Defendant. <br><br> AND <br><br> Elliott Auto Supply Co. <br><br> Respondent. | MN Court File No. 12-mc-93-SRN-SER <br><br> Court File No. Eastern District of North Carolina 5:12-cv-310-BO <br><br><br> **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO ELLIOTT AUTO SUPPLY CO.'S MOTION TO QUASH SUBPOENA** |

### INTRODUCTION

Plaintiffs General Parts Distribution LLC, d/b/a Carquest Auto Parts, and General Parts, Inc. (collectively, "GP") submit this memorandum in opposition to the Motion to Quash Subpoena served by Respondent Elliott Auto Supply Co. ("Elliott"), a Minnesota corporation with its principal place of business in Eagan, Minnesota. Elliott does business as Factory Motor Parts.

Defendant Jennison Perry ("Perry") and his employer, Elliott, continue their coordinated efforts to obstruct GP's right to obtain even the most basic relevant information in connection with GP's pending North Carolina civil action against Perry

for breach of his non-compete agreement and related claims.[1] The noticed Rule 30(b)(6) deposition is directly relevant to GP's civil action against Perry. Indeed, Elliott concedes that GP's request to depose a witness or witnesses regarding "Perry's employment with Elliott" is "legitimate." (Docket No. 24, at 4.)[2] Nonetheless, Elliott refuses to produce <u>any</u> witness based on inappropriate objections and legal positions. As demonstrated below, Elliott's objections and positions are meritless and should be overruled. The Court should deny Elliott's Motion to Quash Subpoena.

## FACTUAL BACKGROUND

I.     THE PARTIES AND THE LITIGATION.

GP and Elliott are both in the business of buying and selling automotive parts. Perry was employed by GP as a Regional Director of Store Operations in the Denver, Colorado area. After Perry's employment with GP ended in January 2012, he began working for Elliott as a Regional Sales Manager in the Denver, Colorado area. GP subsequently learned that Perry was working in a sales capacity, in his former territory, in violation of a Non-Compete Agreement he signed with GP. Perry's activities poses a significant threat to GP's business given that by Perry's own estimate, he was responsible

---

[1] As discussed in GP's previously filed Memorandum in Support of Motion to Enforce Subpoenas on Elliott Auto Supply (Docket No. 4) at footnote 1, Elliott is not merely an uninvolved bystander.  Indeed, since the filing of GP's earlier brief, Elliott has participated in mediation in North Carolina with the Magistrate Judge in the underlying action.  As part of its aggressive support of Perry's defense, Elliott has also apparently advised its non-managerial employees to ignore subpoenas served on them in this action for depositions and has filed a motion in the United States District Court for the District of Colorado seeking to quash those subpoenas.

[2] "Docket No. __" refers to the docket entries in the present court filing, Court No. 12-mc-93 (SRN/SER).

for $6 million dollars in sales for GP in 2011. (Affidavit of David J. Goldstein ("Goldstein Aff.") ¶ 2, Ex. 1.) Accordingly, GP commenced an action against Perry in the United States District Court for the District of North Carolina alleging, among other things, violation of his Non-Compete Agreement and misappropriation of trade secrets (the "North Carolina Action"). (*See* Docket No. 4, at 2.)

Although not a party to the North Carolina Action, Elliott has a clear interest in its outcome. Based on its actions to date, Elliott is clearly concerned that the North Carolina Court could enjoin Perry from continuing to work for Elliott. For example, Elliot has agreed to:

> defend at its expense any legal proceeding brought against You [i.e., Perry] by GP, Inc. based on a claim that You are in violation of the Employment, Confidentiality and Non-Compete/Solicitation Agreement between You and GP, Inc. [and to pay] "all damages and costs finally adjudicated against You. . .

(*Id.* at 2-3.) Elliott also has twice attempted to derail the North Carolina Action by filing lawsuits in this Court seeking to raise the same issues that have been raised in the North Carolina Action. (*Id.* at 3.) In addition, Elliott and Perry are represented by the same legal counsel.

## II.  ELLIOTT AND PERRY'S CONCERTED ATTEMPTS TO THWART THE DISCOVERY PROCESS.

On October 26, 2012, GP properly served Perry with its first set of interrogatories and document requests. (Goldstein Aff. ¶¶ 3-4, Ex. 2-3.) The same day, GP also served Elliott with two subpoenas, including a subpoena duces tecum to Elliot's Custodian of Records, requesting the production of certain documents relevant to the North Carolina

Action. (Docket No. 4, at 3.) GP's second subpoena sought the production of Rule 30(b)(6) corporate representatives to testify regarding certain specified subjects relevant to the North Carolina Action. (*Id.*)

On or around November 9, 2012, Elliott served objections to GP's subpoenas, asserting that Perry "is not engaged in sales." (Docket No. 5, 5-1 at 39-47, 64-73.) On November 20, 2012, counsel for the parties met and conferred for the purpose of attempting to resolve the issues raised by Elliott's objections but were unable to reach agreement. (*See* Docket No. 4, at 4.)

Meanwhile, Perry served his Answers to Interrogatories and Responses to Document Requests on November 28, 2012, but declined to respond to a number of GP's discovery requests, representing that "he is not employed by [Elliott] in a sales capacity" and that "he has not, since being terminated by Plaintiffs, solicited any business or sales from any customers with whom he previously communicated in his official capacity while employed by Plaintiffs." (Goldstein Aff. ¶¶ 5-6, Ex. 4-5 (Ans. to Interrog. Nos. 12, 15).) Although his document production and written discovery responses were largely deficient (*see* Docket No. 5-2, at 19-28), Perry repeatedly claimed that he produced all responsive information "in his possession, custody and control" (*see* Docket No. 5-2, at 10-12, 16).

The parties subsequently engaged in further discussions regarding GP's subpoenas to Elliott but could not resolve their differences, forcing GP to file a Motion to Enforce Subpoenas on Elliott. (*See* Docket No. 4 at 4.) Some of the issues raised by the motion were resolved by Elliott agreeing to search and produce the electronically stored

information ("ESI") of its key custodians using search terms and methodology agreed to by the parties. (Docket Nos. 17, 18.) No decision, however, was sought from the Court with regard to enforcement of the Rule 30(b)(6) deposition because (1) GP needed to review Elliott's document production before proceeding with Elliott's deposition and (2) GP hoped that any remaining issues could be resolved by the parties.

On January 14, 2013, Elliott produced what it describes as over 8,000³ documents. (Docket No. 29, at 8.) That document production includes numerous documents that contradict Perry's and Elliott's prior representations that Elliott is not employing Perry in a sales capacity and that Perry is not contacting GP's customers. For example, the production includes, but is not limited to, documents that show that:

- Perry directly solicited GP customers by email;

- Perry was instrumental in organizing (and actually attended) Elliott Open Houses, to which at least eight (8) GP customers were invited and attended;

- Perry's direct reports were assigned to solicit sales from more than twenty (20) GP customers; and

- Elliott's marketing department sought Perry's input regarding pricing strategy, including as it compared to GP's pricing.

(Goldstein Aff. ¶¶ 7-8.)

---

³ Because of the way in which the documents were produced, Elliott counts each email and its attachments as separate documents  In addition, logos and graphics embedded within the original emails have also been produced and counted as separate documents. So, for example, Elliott has produced thousands of separate document such as document number EAS 000017(designated by Elliott as "Attorneys Eyes Only") which literally contain nothing but the following graphic:
**FACTORYMOTORPARTS**
Of the 8,000 documents produced, only about 5,100 actually have any content.

Accordingly, on February 1, 2013, GP updated and served a Subpoena on Elliott, noticing the deposition of an Elliott corporate witness or witnesses pursuant to Fed. R. Civ. P. 30(b)(6) for February 26, 2013. (Docket No. 25-1.) The subpoena requires a witness or witnesses to be able to testify regarding Perry's employment with Elliott, including Perry's communications with GP's customers and other activities that directly implicate his Non-Compete Agreement, the very information that Perry has failed to provide or denies exists (despite Elliott's documentation to the contrary). (*See id.*) The subpoena lists areas of inquiry related to GP's customers that have been specifically identified in Elliott's document production as entities that Perry or his sales team appear to have directed their sales efforts. (*Id.*) Although Elliott concedes that a Rule 30(b)(6) deposition notice regarding Perry's employment with Elliott is "legitimate" (*see* Docket No. 24, at 4.), Elliott flatly refuses to produce any witness.

On February 21, 2013, Elliott filed the instant Motion to Quash. (Docket No. 22.) The next day, Perry – who is also represented by Elliott's counsel – moved for a protective order in the Eastern District of North Carolina to preventing the Rule 30(b)(6) deposition of Elliott. (E.D.N.C. File No. 5:12-cv-310-BO, Docket Entry No. 127, p.1.)

In addition to responding to Elliott's and Perry's improper and duplicative motions, GP is prepared to file its own motion to compel the deposition of Elliott under Rule 30(b)(6) in conjunction with this response.[4]

---

[4] GP is reluctant to file any additional motions given the number of motions already pending in this action. At the same time, GP has to deal with the fact that Perry and Elliott are now pursuing separate motions in three different federal courts challenging GP's attempts to pursue very basic discovery. GP wants to make sure that it properly

## **LEGAL ANALYSIS**

**I.    LEGAL STANDARD FOR DISCOVERY AND MOTION TO QUASH.**

A corporation commanded by subpoena to attend a deposition must produce one or more deponents to testify regarding matters designated in the subpoena that are within the scope of Rule 26(b). *See* Fed. R. Civ. P. 30(b)(6). Rule 26 allows discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Courts construe the relevancy requirement of Rule 26(b)(1) broadly "to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978); *Mead Corp. v. Riverwood Natural Res. Corp.*, 145 F.R.D. 512, 522 (D. Minn. 1992) ("In determining relevancy, a court must consider a discovery request relevant unless it is clear that the information sought has no bearing upon the subject matter of the action."). "Broad discovery is an important tool for the litigant, and so 'relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *WWP, Inc. v. Wounded Warriors Family Support, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(1)).

Rule 45(a) allows a party to subpoena a non-party to produce information, including deposition testimony, relevant to the case. Fed. R. Civ. P. 45(a); *see also Pointer v. DART*, 417 F.3d 819, 821 (8th Cir. 2005). Only under very limited

---

preserves its right to conduct this discovery in the face of the confusion created by Perry and Elliott's multiple motions.

circumstances—ones which do not apply here—may a court quash or modify a subpoena. *See* Fed. R. Civ. P. 45(c)(3)(A)-(C).

## II.   ELLIOTT FAILS TO MEET THE REQUIREMENTS FOR QUASHING A SUBPOENA UNDER RULE 45.

Elliott moves to quash GP's subpoena, arguing that the subpoena: (1) is overly broad, unduly burdensome and seeks information not relevant to the underlying litigation; and (2) seeks proprietary and confidential information.[5]  These unsupported assertions are without any merit.  As discussed below, GP's subpoena designates specific areas of inquiry focused on information relevant to the North Carolina Action.  Additionally, to the extent that the subpoena seeks any proprietary or confidential information, a protective order in place that provides a strict mechanism to protect Elliott from the improper disclosure and use of such information.  As such, Elliott's motion to quash should be denied.

### A.   GP's Subpoena Is Specifically Tailored to the Issues in the North Carolina Action and Does Not Unduly Burden Elliott.

Under Fed. R. Civ. P. 45(c)(3)(A), a court's ability to quash discovery is limited to circumstances such as "where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the

---

[5] Elliott also argues that the Court should quash General Parts' subpoena because it argues that General Parts must wait to depose Elliott until Perry first deposes General Parts. (Docket No. 24, at 3-4.)  Rule 45 does not authorize courts to quash a subpoenas based on the "order of depositions." *See* Fed. R. Civ. P. 45(c)(3). Moreover, the North Carolina court has issued an order staying General Parts' 30(b)(6) deposition, which is currently still in effect. (Docket No. 5-2, at 29-31.)  Discovery closes in the North Carolina Action on March 1, 2013, and, therefore, General Parts had no choice but to proceed with Elliott's deposition; having no authority to postpone that deposition beyond the discovery deadline.

need of the person seeking discovery of the information." *Datcard Sys., Inc. v. PacsGear, Inc.*, No. 11mc25 (DSD/SER), 2011 U.S. Dist. LEXIS 67589, at *6 (D. Minn. June 23, 2011) (quoting *Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2*, 197 F.3d 922, 925 (8th Cir. 1999)). However, where the value of the information requested outweighs the burden on the subpoenaed party, an order to quash is not warranted and will be denied. *See, e.g.*, *Id.* at *5 (denying motion to quash third-party subpoena because need for information outweighed any burden on third-party).

Elliott concedes that GP seeks relevant information, stating in its memorandum in support of its motion to quash that the first numbered paragraph of the 30(b)(6) topic list – Perry's employment with Elliott – is "legitimate." (Docket No. 24.) Nevertheless, Elliott takes the contradictory position that many (unspecified) topics in the subpoena "are irrelevant to the litigation." GP's remaining fourteen topics, however, simply identify more specific areas of inquiry related to Perry's employment with Elliott. (*See* Docket No. 25-1.) The testimony sought is probative of whether Perry violated his Non-Compete Agreement, and the requests are carefully tailored to lead to evidence that would be admissible in the North Carolina Action. For example, the subpoena's areas of inquiry are directly relevant to the following key issues in the North Carolina Action:

- the solicitation of GP's customers by Perry and his sales team[6] and other communications and competitive sales activities targeted at GP's customers (Paragraphs 2-3, 6-7, 10-11);

---

[6] The activities of Perry's sales team are clearly relevant to the extent that such employees are in any way benefitting from Perry's use of knowledge or connections that he acquired through his employment with GP. For example, if Perry uses GP's confidential information to advise another salesperson regarding who that salesperson should contact and what terms that salesperson should offer, that would be very relevant.

- damages GP may have incurred as a result of those solicitations (Paragraph 4);

- Perry's disclosure of GP's confidential information or trade secrets (Paragraphs 8-9, 13);

- communications relating to Perry's Non-Compete Agreement and the North Carolina Action (Paragraphs 11, 14-15);

- Perry's job duties and responsibilities (which Perry and Elliott have asserted do not include sales activities, but Elliott's documents show otherwise) (Paragraph 5); and

- published communications regarding Perry's employment with Elliott, which would necessarily include communications to GP's customers (Paragraph 12).

(*See* Docket No. 25-1.)

Elliott next argues that the subpoenas are overly broad and unduly burdensome because the 30(b)(6) notice lists "too many [] topics." As an initial matter, there are no restrictions on the number of subjects that may be identified and designated for examination in a 30(b)(6) notice. *See, e.g., Heartland Surgical Specialty Hosp. v. Midwest Division, Inc.*, No. 05-2164, 2007 U.S. Dist. LEXIS 26552, at *6 (D. Kan. Apr. 9, 2007) (notice identified 55 separate topics); *Federal Deposit Ins. Corp. v. Butcher*, 116 F.R.D. 196, 197-98 (E.D. Tenn. 1986) (notice identified at least 12 subjects). Moreover, as discussed above, the fifteen identified areas of inquiry are all closely related to the first area – "Jennison Perry's employment with [Elliott]" – which Elliott concedes is "legitimate." (Docket No. 24 at 4.) The fact that there are a number of areas of inquiry is no reason to quash the subpoena, especially here, where the topics are all specifically focused on and relevant to the North Carolina Action.

Elliott's assertion that the subpoena designates "thousands" of topics is absurd and ignores that every topic is limited to Perry or his sales team. Paragraphs 2 and 3 of the 30(b)(6) notice seek information regarding Perry's and his sales team's contact and communication with GP's customers that GP's counsel specifically identified in Elliott's document production as being solicited or targeted by Perry or his sales team. Paragraph 4 seeks sales information relating to GP's customers, which is certainly relevant to the issue of GP's damages as a result of Perry's unauthorized sales activities in violation of his Non-Compete Agreement.

Elliott and Perry have disavowed Perry's involvement in sales for months, but now Elliott claims that it cannot possibly designate a witness capable of speaking to the breadth of Perry's or his sales team's contact or communications with GP's customers. Elliott cannot have it both ways, claiming that Perry does not work in a sales capacity while also arguing that it is subjected to an "algebraic multiplicity" in an attempt to quash a subpoena. Accordingly, Elliott's motion to quash should be denied because the requested information is crucial to GP's claims, and Elliott cannot show that it will be unduly burdened, especially in light of its aligned interests with Perry and misrepresentations that Perry is not employed in a sales capacity.

> **B.  Elliott's Objection to Disclosing Confidential Information is Without Merit.**

Elliott also objects to producing a witness or witnesses pursuant to Rule 30(b)(6) based on confidentiality concerns. There is no basis for this objection. Although a court may quash a subpoena that requires "disclosing a trade secret or other confidential

research, development, or commercial information," courts refuse to do so when a protective order is in place and the evidentiary value of the information outweighs potential damage to the subpoenaed party. *See Datcard Sys., Inc.*, 2011 U.S. Dist. LEXIS 67589, at *6 (denying motion to quash where protective order allowed subpoenaed party to designate information as confidential or attorneys'-eyes-only).

Here, a Protective Order has been entered in the North Carolina Action, and Elliott may designate and produced information and documents as confidential pursuant to this Protective Order. (Docket No. 30-4.)  This Protective Order was negotiated by the same attorneys who are representing Elliott here. Moreover, the Protective Order allows Elliott to further designate information and documents as "Attorneys Eyes Only." (*Id.*)  Indeed, Elliott has already taken advantage of this Protective Order and designated virtually all of the documents that it has produced as confidential.  Thus, to the extent that Elliott's witness or witnesses are questioned regarding topics that might call for the disclosure of confidential or proprietary information, those portions of the deposition transcript may be designated as "Confidential" or "Attorneys Eyes Only," as appropriate. *Cf. Covey Oil Co. v. Continental Oil Co.*, 340 F.2d 993 (10th Cir. 1965), *cert. denied*, 380 U.S. 964 (upholding requiring nonparty witnesses to comply with subpoena duces tecum requesting trade secrets by making documents available only to counsel and accountants and by forbidding use for business or competitive purposes).[7]

---

[7] The fact that GP has objected to Elliott's designation of 8,000 produced documents as "Attorneys Eyes Only" and demands that Elliott withdraw that designation except where it can offer a genuine basis for such protection does not mean that Elliott will not be able to properly designate testimony as confidential or "Attorneys Eyes Only."  It just means

Finally, the cases Elliott cites in support of its motion are distinguishable from the present case.  In both *United States v. Serta Associates, Inc.*, 29 F.R.D. 136 (N.D. Ill. 1961) and *Echostar Communications Corp. v. New Corp. Ltd.*, 180 F.R.D. 391 (D. Colo. 1998), the courts held that the competitor did not need to disclose confidential and trade secret information because there was no showing of a need for the information and relevancy was not clear.  In contrast, as discussed above, GP identified areas of inquiry in its Rule 30(b)(6) notice are specifically focused on information relevant to the North Carolina Action.

Additionally, GP's need to obtain the requested information directly from Elliott is significant because Perry has repeatedly failed to fully respond to certain discovery requests, claiming that he has produced all responsive information in his "possession, custody and control" (even though Elliott's document production shows that Perry's responses are incomplete).  *See Composition Roofers Union v. Graveley Roofing Enterprises, Inc.*, 160 F.R.D. 70, 72-73 (D. Pa. 1995) (holding that it was not undue burden to subpoena information from nonparty when information was unavailable because defendants failed to produce it, especially in light of nonparty's close relationship with defendants).  GP cannot obtain the highly relevant information from another source, and it would be unduly prejudiced if it was not allowed to obtain information that is unquestionably necessary for GP to pursue its claims.  *See* Fed. R. Civ. P. 45(c)(3)(C)(i) (providing that the Court may order appearance if serving party

---

that it must exercise this right in good faith and not for the purpose of impeding discovery.

shows substantial need for testimony or material).  The Court should, therefore, deny Elliott's Motion to Quash.

## CONCLUSION

Elliott's positions regarding legitimate discovery sought by GP are meritless. The Court should overrule those positions and Elliott should be required to respond to GP's subpoena by producing the requested witnesses. GP respectfully requests that the Court so rule.

| | |
|---|---|
| Dated: February 28, 2013 | *s/ David J. Goldstein* |
| | George R. Wood (#0166017) |
| | gwood@littler.com |
| | David J. Goldstein (#0175572) |
| | dgoldstein@littler.com |
| | **LITTLER MENDELSON, P.C.** |
| | 1300 IDS Center |
| | 80 South 8th Street |
| | Minneapolis, MN  55402.2136 |
| | Telephone: 612.630.1000 |
| | Facsimile:  612.630.9626 |
| | **ATTORNEYS FOR PLAINTIFF GENERAL PARTS DISTRIBUTION LLC D/B/A CARQUEST AUTO PARTS AND GENERAL PARTS, INC.** |

Firmwide:118626423.1 065678.1037