UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

General Parts Distribution, LLC,
d/b/a Carquest Auto Parts and
General Parts, Inc.

      Plaintiff,

v.                                                                                            No. 12-mc-93 (SRN/SER)

Jennison Perry

      Defendant,                                                      **AMENDED ORDER**

v.

Elliott Auto Supply Co.,

      Respondent.
_____

      David J. Goldstein, George R. Wood, Esqs., Littler Mendelson, PC, 80 South Eighth Street Suite 1300, Minneapolis, MN 55402, for Plaintiffs.

      Matthew D. Forsgren, Kari S. Berman, Scott M. Flaherty, Esqs., Briggs & Morgan PA, 80 South Eighth Street Suite 2200, 247 Minneapolis, MN 55402, for Defendant and Respondent.
_____

STEVEN E. RAU, United States Magistrate Judge

      This North Carolina-venued case involves an expired one-year non-compete agreement and allegedly $500,000.00 in auto parts sales. Nevertheless the case has occupied the time of two other federal magistrate judges—one in Colorado and one in North Carolina. The real parties in interest, Elliott Auto Supply Company ("Elliott") and General Parts Distribution, LLC, ("General Parts") appear to be oblivious to any notion of proportionality and are behaving, at various times, like two seven-year-olds tattling on each other to a playground supervisor.

      Defendant Jennison Perry ("Perry") originally worked for General Parts in Colorado and allegedly was terminated for poor performance. (Mem. of Law in Supp. of Elliott Auto Supply Co.'s Mot. to Quash Subpoena, "First Elliott Mem.") [Doc. No. 24 at 2]. Eliott then hired Perry

1

and has bankrolled the various legal disputes related to his reemployment in Colorado, North Carolina, and Minnesota—although Elliott, with one exception, has never been a named party.[1]

General Parts and Elliott were before this Court three months ago in connection with General Parts's Motion to Enforce Subpoenas on Elliott Auto Supply Company (the "December Motion") [Doc. No. 2]; (Minute Entry dated Dec. 28, 2012) [Doc. No. 16]. At the conclusion of that hearing the Court suggested that the Parties avail themselves of a nearby conference room and attempt to resolve the dispute, since neither party would be particularly happy with the Court's contemplated resolution. (Tr. dated Dec. 28, 2012, "Dec. 28, 2012 Hr'g Tr.") [Doc. No. 21 at 34].

After the Parties successfully agreed to an armistice, however, the Court's hopes for a lasting cease-fire were dashed in short order. They are again before the Court squabbling about the scope of a subpoena under Federal Rule of Civil Procedure 45, requesting that Elliott produce some of its personnel to respond to a Notice of Taking of Deposition under Federal Rule of Civil Procedure 30(b)(6).

## I.  BACKGROUND

### A. Factual Background

Perry has worked in the auto parts industry since he graduated from high school. For much of his career, he was employed by General Parts and worked near Denver, Colorado. General Parts dismissed Perry for poor performance in January 2012. (First Elliott Mem. at 2). At the time of his dismissal, Perry was subject to a non-compete agreement that expired on January 9, 2013. (Elliott Auto Supply Co's Opp'n to Pls.'s Mot. to Enforce Subpoenas) [Doc. No. 10 at 16]. About a month later, Perry sought and obtained a new position in the Denver, Colorado area with Elliott, one of General Parts's competitors. (*Id.*). General Parts now alleges that Perry's

---

[1] The case in which Elliott was a party was a declaratory judgment action, *Elliott Auto Supply Co. v. Gen. Parts Distrib. LLC*, Civ. No. 12-1185 (RHK/TNL). The action is discussed in more detail below.

employment in a sales capacity at Elliott violates the non-compete agreement. Perry and Elliott deny these allegations.

While it is clear that Perry left General Parts and later took a job with Elliott, there are many details that are unclear about this case. For example, General Parts has been unable to value the amount of damages it is alleging. At the December hearing, General Parts represented that the damages "are still to be determined." (Dec. 28, 2012 Hr'g Tr. at 7). At the March hearing, General Parts stated that it calculated "over half a million dollars in sales in the first nine months of 2012 to [its] customers [in Perry's territory]." (Hr'g Tr. dated Mar. 22, 2013, "Mar. 22, 2013 Hr'g Tr.") [Doc. No. 53 at 4]. Yet that figure represents alleged diverted sales during the time in question, not lost profits. The Court notes that there is a material difference between diverted sales and the measure of damages in non-compete agreement cases. In reality, General Parts has never provided a definitive answer to the Court regarding the measure of damages in this case.

### B. Procedural History

As noted above, this case is now on the dockets of three different federal district courts—the District of Minnesota, the District of Colorado, and the Eastern District of North Carolina.

General Parts filed suit in the North Carolina state courts on May 7, 2012, and Perry removed the action to the Eastern District of North Carolina two weeks later.[2] (Mem. Op. and Order, "Kyle Order") [12-cv-1185 Doc. No. 30 at 3]. On May 16, 2012, Elliott filed a declaratory judgment action in the District of Minnesota, asserting that it did not violate the terms of Perry's non-compete agreement. (Compl.) [12-cv-1185 Doc. No. 1]. District Judge Richard H. Kyle dismissed Elliott's suit, making the suit in the Eastern District of North Carolina the main litigation in the dispute over Perry's employment. (Kyle Order at 8).

---

[2] The action in the Eastern District of North Carolina is captioned *General Parts Distribution, LLC, d/b/a CARQUEST Auto Parts, and General Parts, Inc, v. Jennison Perry*, No. 5: 12-cv-310-BO. The docket contains 149 docket entries.

Before the year was out, however, General Parts and Eliott were again in the District of Minnesota, this time to argue about General Parts's subpoenas of documents allegedly relevant to the North Carolina action and production of corporate representatives in accordance with Federal Rule of Civil Procedure 30(b)(6).  The Court held a hearing on this motion, and as described above, urged General Parts and Elliott to work together and find a resolution.  (Dec. 28, 2012 Hr'g Tr. at 34).  The Court received a Joint Status Report Letter on January 10, 2013, describing the resolution of the discovery disagreement.  [Doc. No. 18].

General Parts resumed discovery following the Parties' resolution of the December Motion.  General Parts served Elliott with a new notice of deposition in the District of Minnesota on February 1, 2013.  (Pl.'s Notice of Taking Deps. of Elliott Auto Supply Co. d/b/a Factory Motor Parts, "Notice of Dep.," Ex. 4, attached to Aff. Scott M. Flaherty, "Flaherty Aff.") [Doc. No. 25].  General Parts also served subpoenas and notices of taking of depositions on several Elliott employees in Colorado.  *Domanski et al v. Gen. Parts Distrib. LLC d/b/a CARQUEST Auto Parts and Gen. Parts*, Civ., No. 13-cv-471-RBJ-BNB (D. Colo. 2013).  There, as here, Elliott filed a motion to quash in federal district court.  (Non-Parties' Mot. to Quash Dep. Subpoenas and for Protective Order, *Domanski et al v. Gen. Parts Distrib. LLC d/b/a CARQUEST Auto Parts and Gen. Parts*, Civ., No. 13-cv-471-RBJ-BNB (D. Colo. 2013) [Doc. No. 2].  Magistrate Judge Boyd N. Boland of the District of Colorado granted the motion in part.[3]  (Order dated Mar. 18, 2013) [D. Colo. 13-cv-471-RBJ-BNB Doc. No. 21].

---

[3] As of the date of this Order, the docket in the District of Colorado contains twenty-two entries.

In response to the subpoenas served in Minnesota, Elliott filed two motions requesting quashing or modification of the subpoenas, and General Parts (not to be outdone) filed its own motion to enforce its subpoenas. [Doc. Nos. 22, 27, 44]. Those three motions are now before the Court.

## II. DISCUSSION

### A. Preliminary Matters

The Parties' briefing reveals that much of the relief they seek from this Court is inextricably related to discovery disputes in the North Carolina action. For example, General Parts asserts in one of its memoranda that its "need to obtain the requested information directly from Elliott is significant because Perry has repeatedly failed to fully respond to certain discovery requests . . . ." (Pl.'s Mem. in Opp'n to Elliott Auto Supply Co.'s Mot. to Quash Subpoena) [Doc. No. 34 at 13]. At the hearing on March 22, 2013, General Parts's counsel stated to the Court that its Rule 30(b)(6) deposition notice "is intended to discover what activities [Perry] has been involved in . . . . And that's what's at issue in the North Carolina action. The problem is [General Parts would] try to get information from [Perry] and he says, 'You have to go to Elliot'." (Mar. 22, 2013 Hr'g Tr. at 9–10). In support of their strategy, General Parts cites a case from the Eastern District of Pennsylvania, *Composition Roofers Union Local Welfare Trust Fund v. Graveley Roofing Enters.*, 160 F.R.D. 70 (E.D. Pa. 1995), but no case law from this District or the Eighth Circuit.

Elliott, for its part, earnestly argues that this Court has the power to resolve issues relating to the operation of the North Carolina protective order. (Mem. in Supp. of Non-Party Elliott Auto Supply Co.'s Mot. for Relief Relating to Subpoena *Duces Tecum* Dated Oct. 26, 2012) [Doc. No. 27 at 9–10, 13–16]. For example, Elliott states that "[p]ursuant to Paragraph 12 of the Protective

order, *Elliot should be ordered by this Court to identify any documents that it seeks to have redesignated.*" (*Id.* at 16) (emphasis in original).

At the date of this writing, the docket in the District of Minnesota now contains nearly sixty entries. The Court is cognizant of its obligation to serve as a fair and neutral referee over disputes such as this. The Federal Rules of Civil Procedure, however, also prohibit burdensome discovery, and discovery that is disproportionate to the matter in controversy. *See* Fed. R. Civ. P. 1, 26(b)(2)(B), 26(b)(2)(C), 45(c)(1), 45(c)(c)(3)(A)(iv). Here, the facts indicate that (1) Perry is a relatively low-level employee and (2) his non-compete agreement has now been expired for several months. Furthermore, General Parts has supplied no meaningful information to the Court on the amount of damages in this case. In such circumstances, the continued and acrimonious discovery disputes between Elliott and General Parts **in a district that is not even home to the underlying litigation** leave the Court somewhat mystified.

In addition, statements like those quoted above give rise to concerns that Elliott and General Parts are asking this Court to rule on discovery disputes that are properly before judges in the Eastern District of North Carolina. The Parties each assert various other alleged infractions that relate largely to the execution of the North Carolina protective order. This Court declines to address those issues and will leave their resolution to judicial officers in the district where the underlying litigation is filed. This Court will, however, address the scope of the Rule 30(b)(6) Notice of Deposition.

If the two companies are unable to move forward and resolve their discovery disputes in this District in an orderly fashion, the Court will consider issuing an Order to Show Cause, so that it may hear from the leaders of both General Parts and Elliott, who are responsible for directing their companies' actions in this case.

### B. The Cordell Deposition

General Parts learned in discovery that Perry's supervisor is a gentleman named Tim Cordell ("Cordell"). General Parts sought to depose Cordell in Minneapolis, but alleges that Elliott "apparently instructed Cordell to ignore his subpoena." (Pl.'s Mot. to Enforce Subpoenas on Elliott Auto Suppy Co. & Tim Cordell, "Second Mot. to Enforce Subpoenas") [Doc. No. 44]; (Pls.'s Mem. of Law in Supp. of Mots. to Enforce Subpoenas on Elliott Auto Supply Co. and Tim Cordell) [Doc. No. 41 at 5]. Elliott counters that "Tim Cordell did not refuse to appear for his deposition. He was on his way to downtown Minneapolis to be deposed. He turned around only after General Parts's counsel informed [Elliott's] counsel that he thought the deposition was cancelled." (Resp. in Opp'n to Pl. General Parts's Mots. to Enforce Subpoenas on Resp. Elliott Auto Supply Co. & Putative, Non-Party Resp. Tim Cordell) [Doc. No. 46 at 1].

General Parts filed a letter in response to Elliott's assertions, stating that if there was a misunderstanding and General Parts "failed to take advantage of Mr. Cordell's availability to be deposed, that was an honest mistake on [General Parts's] part arising out of the confusion cause by Elliott and Perry's objections to proceeding with every other deposition that General Parts had noticed . . . ." (Letter dated Mar. 14, 2013, "General Parts Letter") [Doc. No. 49 at 2].

At the hearing on these motions, the Court expressed concern about the need to address minor matters of logistics and communications. There is no legal dispute here, just an abject failure of counsel to communicate. The Court need not serve as the Parties' therapist. Because both General Parts and Elliott appear to agree that Cordell is a proper deponent, they are ordered to arrive at a mutually acceptable time and place for his deposition.

### C. The Rule 30(b)(6) Deposition

The Court court now turns to the General Parts's Rule 30(b)(6) subpoenas. On February 1, 2013, General Parts served Plaintiff's Notice of Taking Depositions of Elliott Auto Supply Co., d/b/a Factory Motor Parts. (Notice of Dep.). The Notice of Deposition contained multiple subparts, and requested fine-grain detail on Perry's contacts with dozens of auto parts retailers, information about goods and services sold between January 2012 and February 2013, and many other items relating to Perry's employment at Elliott. (*Id.*).

"Broad discovery is an important tool for the litigant, and so relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *WWP, Inc. v. Wounded Warriors Family Supports, Inc.*, 628 F.3d 1032, 1039 (8th Cir. 2011). A subpoena must seek relevant information, and the party must take reasonable steps to avoid imposing "undue burden or expense" on a person subject to a subpoena. Fed. R. Civ. P. 45(c); s*ee also Roberts v. Shawnee Mission Ford, Inc*., 352 F.3d 358, 361 (8th Cir. 2003).

A court must modify or quash a subpoena if it subjects a person to undue burden, and may quash it if it requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(A)(iv), 45(c)(3)(B)(i). In determining whether to grant a motion to quash, courts must weigh the relevance of the requested materials against the burden to the party subject to the subpoena. *See, e.g.*, *Shawnee Mission Ford, Inc.,* 352 F.3d 360–62; *Plant Genetic Sys. N.V. v Northrup King Co.*, 6 F. Supp. 2d 859, 861 (E.D. Mo. 1998).

When determining whether information requests pursuant to the subpoena are relevant, "[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder." *Truswall Sys. Corp. v Hydro-Air Eng'g, Inc.*, 813 F.3d 1207,

1211–12 (Fed. Cir. 1987) (internal quotation omitted). In this case, General Parts is seeking information from Eliott about Perry, but also requests large volumes of information about contacts and communications with dozens of Colorado retailers and specific identification of every good and service sold to them. (Notice of Dep. at 5–9). General Parts openly acknowledges that its subpoena is in part an alternative means to obtain discovery that Perry either cannot or will not provide. *Supra* at 5. To the extent General Parts is trying to do an end-run around its discovery dispute with Perry, the subpoena is improper.

The Court is mindful of the warning in the *Truswall* opinion, and hesitates to make rulings on relevancy that are properly a question for the judges in the Eastern District of North Carolina. This miscellaneous matter is unique, however, in that the litigants have appeared before the Court twice for extensive oral argument, and have submitted nearly five dozen docket items, including motions, affidavits, declarations, and memoranda. Through these documents and oral arguments, the Court has been able to determine that some of the subpoena's sub-parts are legitimately calculated to result in relevant information. Subparts 1, 5, 6, 7, 8, 9, 10, and 12 pertain to information likely within Elliott's control, and will not impose undue burden on Elliott. The Court therefore modifies the subpoena and restricts it to those subparts alone. The other subparts are unduly burdensome on Elliott, seek information that is very likely confidential commercial information, or, by General Parts's own admission, are simply a means to obtain discovery that Defendant Perry has not yet provided.

Finally, General Parts and Elliott will abide by the provisions of the protective order issued by the Eastern District of North Carolina. Any disputes or questions about its interpretation or effect are properly before the judges assigned to the underlying litigation.

### III. CONCLUSION

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Enforce Subpoenas on Elliott Auto Supply Co. and Tim Cordell [Doc. No. 44] is **GRANTED** to the extent it seeks to depose Tim Cordell. The Parties will work together to find a mutually agreeable time and date for the Deposition of Tim Cordell. The Parties will notify the Court of the date and time of this Deposition via a letter filed on CM/ECF within **fourteen (14)** days of the date of this order.

2. Respondent Elliott Auto Supply Co.'s Motion to Quash Subpoena [Doc. No. 22] and Plaintiff's Motion to Enforce Subpoenas on Elliott Auto Supply Co. and Tim Cordell [Doc. No. 44] are **GRANTED in part** and **DENIED in part as follows:**

    a. Plaintiff's Notice of Taking Depositions of Elliott Auto Supply Co. d/b/a Factory Motor Parts (Notice of Dep., Ex. 4, attached to Flaherty Aff.) [Doc. No. 25] will be modified to contain **only Subparts 1, 5, 6, 7(a)–(d), 8, 9, 10,** and **12**.

    b. The Motions are denied in all other respects.

3. The Court declines to rule on Non-Part Elliott Auto Supply Co.'s Motion for Relief Relating to Subpoena *Duces Tecum* dated October 26, 2012 [Doc. No. 27], because the relief requested is properly a matter for the Eastern District of North Carolina, where the underlying litigation is filed.

Dated: April 3, 2013

 *s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge