UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| General Parts Distribution, LLC, d/b/a Carquest Auto Parts, and General Parts, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> Jennison Perry, <br><br> Defendant, <br><br> v. <br><br> Elliott Auto Supply Co., <br><br> Respondent. | No. 12-mc-93 (SRN/SER) <br><br><br> **MEMORANDUM OPINION AND ORDER AFFIRMING THE MAGISTRATE JUDGE'S APRIL 3, 2013, AMENDED ORDER** |

David J. Goldstein and George R. Wood, Littler Mendelson, PC, 80 South Eighth Street, Suite 1300, Minneapolis, MN 55402, on behalf of Plaintiffs.

Matthew D. Forsgren, Kari S. Berman, and Scott M. Flaherty, Briggs and Morgan, P.A., 80 South Eighth Street, Suite 2200, Minneapolis, MN 55402, on behalf of Defendant and Respondent.

SUSAN RICHARD NELSON, United States District Judge

### I.    INTRODUCTION

This matter is before the Court on Plaintiffs' Rule 72(a) Objections [Doc. No. 60] to Magistrate Judge Steven E. Rau's April 3, 2013, Amended Order [Doc. No. 59] granting in part and denying in part Respondent's Motion to Quash Subpoena [Doc. No. 22] and granting in part and denying in part Plaintiffs' Motion to Enforce Subpoenas [Doc. No. 44].

After reviewing the Magistrate Judge's Amended Order for clear error, the Court affirms the Amended Order for the reasons set forth below.

## II. BACKGROUND

This lawsuit is venued in the U.S. District Court for the Eastern District of North Carolina. (Am. Order dated April 3, 2013, at 3 n.2 [Doc. No. 59].) It involves claims brought by Plaintiff General Parts Distribution, LLC, d/b/a Carquest Auto Parts, and Plaintiff General Parts, Inc. (collectively, "General Parts") against Defendant Jennison Perry ("Perry") relating to his alleged breach of a noncompetition agreement he entered into with General Parts. (See Verified Compl. & Mot. for Injunctive Relief ¶¶ 26–75 [Doc. No. 5, Ex. 1].) General Parts is a North Carolina corporation, and Perry worked for General Parts in the Denver, Colorado area. (Id. ¶¶ 1, 10–11.) General Parts alleges that Perry breached the noncompetition agreement by accepting employment with Respondent Elliott Auto Supply Co. ("Elliott") in Colorado after General Parts terminated his employment in January 2012. (Id. ¶¶ 18–20.)

The matter reached this Court by virtue of a dispute over the scope of a subpoena issued pursuant to Federal Rule of Civil Procedure 45 in which General Parts requested that Elliott, a Minnesota corporation, produce a corporate representative for a Rule 30(b)(6) deposition. (Am. Order at 2 [Doc. No. 59]; Pls.' Rule 72(a) Objections to Magistrate's April 3, 2013 Am. Order at 3 [Doc. No. 60] ("Pls.' Objections").) The Notice of Taking Deposition of Elliott ("Notice of Deposition") contains fifteen subparts. (See Flaherty Aff. dated Feb. 21, 2013, Ex. 1 [Doc. No. 25-1] ("First Flaherty Aff.").) Of particular relevance to the present matter, Subpart 3 requests information regarding "[a]ll contacts and

communications" between any Elliott employee who Perry has supervised and at least twenty-seven different entities[1] over a period of approximately one year, and Subpart 4 requests specific information regarding the identification, quantity, price, and cost of each good and service sold by Elliott to any of the previously-identified entities. (Id. ¶¶ 3–4.)

Elliott filed a Motion to Quash Subpoena on February 21, 2013 [Doc. No. 22] ("Motion to Quash"), and General Parts filed a Motion to Enforce Subpoenas[2] in early March [Doc. No. 44] ("Motion to Enforce"). Elliott and General Parts filed briefs in support of and in opposition to both motions. (See Doc. Nos. 24, 34, 41, 46.) The Magistrate Judge held a hearing on the motions on March 22, 2013. (Civil Mot. Hearing [Doc. No. 52].)[3] On April 3, he filed an Amended Order granting in part and denying in

---

[1] If a specific location of an entity listed in Subpart 3 of the Notice of Deposition was not indicated, General Parts requested that Elliott be prepared to testify regarding the entity's locations in fifteen different cities. (Flaherty Aff., Ex. 1 [Doc. No. 25-1].) Furthermore, in addition to the twenty-seven entities expressly identified in Subpart 3, General Parts included a catch-all subdivision (bb) that requests information relating to contacts and communications with "[a]ny other General Parts customer or potential customer with which Perry had contact on behalf of General Parts as an employee of General Parts." (See id.)

[2] In addition to the subpoena served on Elliott, General Parts also sought to enforce a subpoena served on Tim Cordell, an employee of Elliott, for a deposition in Minneapolis. (Pls.' Mot. to Enforce Subpoenas at 1 [Doc. No. 44].) The Magistrate Judge ordered that deposition to move forward. (Am. Order at 7, 10 [Doc. No. 59].) That portion of the Amended Order is not at issue. (See Pls.' Objections at 1 [Doc. No. 60].)

[3] The parties have also engaged in extensive discovery motion practice in the U.S. District Court for the Eastern District of North Carolina and the U.S. District Court for the District of Colorado. (See Am. Order at 3–4. [Doc. No. 59].) On May 30, 2013, Judge Boyle, the district court judge in the underlying lawsuit in the U.S. District Court for the Eastern District of North Carolina, ordered discovery closed as of June 1, 2013, and dismissed twelve pending discovery motions. See Order, Gen. Parts Distribution LLC d/b/a Carquest Auto Parts v. Perry, No. 5:12-CV-310-BO (E.D.N.C. May 30, 2013).

part both motions.[4] (Am. Order at 10 [Doc. No. 59].) The Magistrate Judge found that the subpoena was improper to the extent General Parts was using it as an alternative means to obtain discovery from Perry. (Id. at 9.) Based on the two "extensive oral argument[s]" and almost five dozen docket items, the Magistrate Judge also determined that some of the requests in the Notice of Deposition would be unduly burdensome to Elliott and "seek information that is very likely confidential commercial information." (Id.) Therefore, the Magistrate Judge modified the Notice of Deposition to remove Subparts 2, 3, 4, 11, and 13–15. (Id. at 10.) General Parts filed Rule 72(a) Objections to the Amended Order on April 17, 2013 [Doc. No. 60]. Elliott filed its response on May 1 [Doc. No. 62].

### III. DISCUSSION

#### A. Standard of Review

Discovery-related motions are nondispositive motions. D. Minn. LR 7.1(b)(4)(A). "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). The Court must affirm the order unless it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); accord D. Minn. LR 72.2(a)(3). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364,

---

[4] The Magistrate Judge's original order, filed on April 2, 2013 [Doc. No. 58], was apparently filed in error. The Magistrate Judge filed an Amended Order on April 3, 2013. The Amended Order is the subject of General Parts' objections. (See Pls.' Objections at 1 [Doc. No. 60].)

395 (1948). If the magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though had it been sitting as the trier of fact, it would have weighed the evidence differently. Anderson v. Bessemer City, 470 U.S. 564, 573–74 (1985).

### B.   Objections

General Parts objects to the Amended Order to the extent it prohibits General Parts from obtaining the testimony requested in Subparts 3[5] and 4 of the Notice of Deposition. (Pls.' Objections at 2 n.2 [Doc. No. 60].) General Parts challenges the Magistrate Judge's rulings that: (1) complying with Subparts 3 and 4 would be unduly burdensome to Elliott; (2) Subparts 3 and 4 seek information that is very likely confidential commercial information; and (3) Perry, rather than Elliott, is the proper source of the information requested in Subparts 3 and 4. (Id. at 2.)

#### 1.   Undue Burden

General Parts first objects to the Magistrate Judge's determination that compliance with Subparts 3 and 4 of the Notice of Deposition would impose an undue burden on Elliott. (Id.) Pursuant to Federal Rule of Civil Procedure 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c)(1). The issuing court is obligated to enforce this duty and to quash a subpoena that subjects a person to undue burden. Id.; Fed. R. Civ. P. 45(c)(3)(A)(iv). Concern for the

---

[5]   General Parts does not seek to enforce the catch-all subdivision (bb) of Subpart 3. (Pls.' Objections at 5 n.3 [Doc. No. 60].)

burden upon non-parties carries "'special weight.'"  Misc. Docket Matter No. 1 v. Misc. Docket No. 2, 197 F.3d 922, 927 (8th Cir. 1999) (quoting Cusumano v. Microsoft Corp., 162 F.3d 708, 717 (1st Cir. 1998)).

The Magistrate Judge's finding of undue burden is not clearly erroneous.  General Parts argues that Elliott has failed to establish any undue burden.  (Pls.' Objections at 2 [Doc. No. 60].)  However, in Subpart 3 alone, General Parts seeks information relating to communications between multiple people and twenty-seven different entities at the entities' locations in anywhere from one to fifteen cities.  This one request essentially contains hundreds of subdivisions.  Similarly, General Parts' request in Subpart 4 for detailed information relating to each good and service sold by Elliott to those twenty-seven entities at their various, and sometimes undetermined, locations essentially comprises hundreds of subdivisions.  Elliott argued these points in support of its Motion to Quash.  (See Mem. of Law in Supp. of Elliott Auto Supply Co.'s Mot. to Quash Subpoena at 4–7 [Doc. No. 24].)

In addition, General Parts asserts that there is no burden because Elliott already has the documents in its possession, and that it is less burdensome to discuss the contacts in a deposition than it is to produce the relevant documents.  (Pls.' Objections at 2, 7–10 [Doc. No. 60].)  In response to a Rule 30(b)(6) deposition notice, however, "[a] corporation . . . must not only produce such number of persons as will satisfy the request, but more importantly, prepare them so that they may give complete, knowledgeable and binding answers on behalf of the corporation."  Marker v. Union Fidelity Life Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989) (citing 8 Wright & Miller, Federal Practice and

Procedure §§ 2103, 2110 (Supp. 1988)). According to General Parts, Elliott has produced at least 5,000 documents in this case. (Pls.' Mem. in Opp. to Elliott Auto Supply Co.'s Mot. to Quash Subpoena at 5 n.3 [Doc. No. 34].) The burden of preparing a witness to testify regarding communications between unspecified individuals and an indeterminate number of companies involving potentially thousands of documents is not an insignificant burden. In light of Elliott's status as a non-party, that burden must be given special weight. The Magistrate Judge's finding of undue burden is plausible based on this record; therefore, this Court may not reverse it even if it would have weighed the evidence differently.

### 2.   Confidential Commercial Information

General Parts next objects to the Magistrate Judge's finding that protection is appropriate because Subparts 3 and 4 of the Notice of Deposition seek information that is likely confidential commercial information. (Pls.' Objections at 2 [Doc. No. 60].) Pursuant to Federal Rule of Civil Procedure 45, "[t]o protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(c)(3)(B)(i). "Confidential commercial information is information which, if disclosed, would cause substantial economic harm to the competitive position of the entity from whom the information was obtained." Diamond St. Ins. Co. v. Rebel Oil Co., 157 F.R.D. 691, 697 (D. Nev. 1994) (citations omitted). Such information need not constitute an actual trade secret. See, e.g., Moon v. SCP Pool Corp. 232 F.R.D. 633, 638 (C.D. Cal. 2005) (finding that certain "requests

7

clearly seek [commercial information] since they seek documents related to [a nonparty's] business relationship with other nonparties"); United States v. Three Bank Accounts, Nos. Civ. 05-4145-KES, 06-4005-KES, 2008 WL 915199, at *8 (D.S.D. Apr. 2, 2008) (applying Rule 45's provision regarding "confidential commercial information" to requests for documents containing "social security numbers, employer identification numbers, account numbers, financial transactions, and other confidential information of a commercial nature").

The Magistrate Judge's finding that the information sought in Subparts 3 and 4 is likely confidential commercial information is not clearly erroneous.  General Parts argues that the Magistrate Judge did not hold Elliott to its burden of establishing the evidence at issue is a trade secret.  (Pls.' Objections at 2, 10–11 [Doc. No. 60].)  However, the information sought to be protected need only be "confidential commercial information," not a "trade secret."  Elliott has stated in multiple documents filed with the Court that the requested information is highly confidential.  For example, in its brief in support of the Motion to Quash, Elliott asserted that the "detailed pricing information for product lines in which [Elliott and General Parts] compete" is "highly confidential and proprietary information."  (Mem. of Law in Supp. of Elliott Auto Supply Co.'s Mot. to Quash Subpoena at 2 [Doc. No. 24].)  In addition, in its brief in opposition to the Motion to Enforce, Elliott set forth several types of "confidential business information" that would be implicated by the Notice of Deposition, including purchase histories, pricing programs, product costs, and sales and margin data.  (See Elliott Auto Supply Co.'s Opp. to Pls.' Mot. to Enforce Subpoena at 10 [Doc. No. 10]; see also Stenerson Aff. ¶¶ 6–7

[Doc. No. 11].)  It seems to be undisputed that such information is commercial in nature. Furthermore, Elliott's general counsel has testified that providing this information to General Parts, a direct competitor, would do "significant harm" to Elliott.  (Stenerson Aff. ¶ 6 [Doc. No. 11].)  In this situation, the Court finds no clear error in the Magistrate Judge's determination that the subpoena requested information that is very likely confidential commercial information.

General Parts also objects to quashing Subparts 3 and 4 on confidentiality grounds because, according to General Parts, Elliott has already produced similar information and any confidentiality concerns can be addressed by the protective order currently in place in the underlying litigation.  (Pls.' Objections at 2, 11–12 [Doc. No. 60].)  Even if these statements were true, the Magistrate Judge had discretion to determine whether it was appropriate to quash portions of the subpoena under Rule 45.  See, e.g., Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 729 (8th Cir. 2002); Misc. Docket No. 1, 197 F.3d at 925 ("Because of liberal discovery and the potential for abuse, the federal rules 'confer[] broad discretion on the [district] court . . . .'") (citation omitted).  This Court is not left with a firm conviction that the Magistrate Judge erred.

### 3. Improper Source

General Parts next objects to the Magistrate Judge's determination that General Parts should seek the requested information from Perry rather than from Elliott.  (Pls.' Objections at 2 [Doc. No. 60].)  Again, concern about the burden on non-parties carries "special weight."  Misc. Docket Matter No. 1, 197 F.3d at 927 (citations omitted). Therefore, it may be appropriate to prohibit a party from obtaining discovery from a non-

party if that same discovery is available from another party to the litigation. See <u>Arthrex, Inc. v. Parcus Med., LLC</u>, No. 1:11-mc-00107-SEB-DML, 2011 WL 6415540, at *6 (S.D. Ind. Dec. 21, 2011) ("A party's ability to obtain documents from a source with which it is litigating is a good reason to forbid it from burdening a non-party with production of those same documents.") (citations omitted).

The Magistrate Judge's finding that information sought in the subpoena should be obtained from Perry rather than from Elliott where possible is not clearly erroneous. General Parts argues that Perry has acknowledged Elliott is the proper source of the information requested in Subparts 3 and 4, that the subpoena was based on documents produced by Elliott, and that the Magistrate Judge's Amended Order acknowledges that the information is likely Elliott's property. (Pls.' Objections at 2–3, 12–13 [Doc. No. 60].) However, the Magistrate Judge only stated that, "[t]o the extent General Parts is trying to do an end-run around its discovery dispute with Perry, the subpoena is improper." (Am. Order at 9 [Doc. No. 59] (emphasis added).) The language indicates that this reason was not necessarily the basis for invalidating <u>all</u> of the subparts that the Magistrate Judge ordered quashed; rather, it was yet another reason why at least some of the requests should be quashed. Even assuming that the Magistrate Judge meant for that statement to refer to Subparts 3 and 4[6], a finding that any of the information in those

---

[6] While General Parts only objects to the Magistrate Judge's removal of Subparts 3 and 4 from the Notice of Deposition, the Magistrate Judge also ordered removal of Subparts 2, 11, and 13–15. (See Am. Order at 10 [Doc. No. 59].) The Magistrate Judge's concern that General Parts is trying to obtain discovery from an improper source may have been directed at subparts other than, or in addition to, Subparts 3 and 4. For example, Subpart 13 requests testimony regarding certain information Perry has provided

Subparts that is available from Perry, who is a party to the litigation, should be obtained from him rather than from Elliott, a non-party, is not contrary to law.

In light of the deference accorded to orders of magistrate judges on nondispositive issues, this Court finds that the Magistrate Judge's Amended Order granting in part and denying in part Respondent's Motion to Quash Subpoena and Plaintiffs' Motion to Enforce Subpoenas was not clearly erroneous or contrary to law.[7]

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiffs' Objections [Doc. No. 60] to the Magistrate Judge's April 3, 2013, Amended Order [Doc. No. 59] are **OVERRULED**; and

2. The Magistrate Judge's April 3, 2013, Amended Order [Doc. No. 59] is **AFFIRMED**.

Dated: June 25, 2013                          s/Susan Richard Nelson
                                              SUSAN RICHARD NELSON
                                              United States District Judge

---

to Elliott. (See First Flaherty Aff., Ex. 1 [Doc. No. 25-1].) Such information, if it exists, is likely to be in Perry's possession.

[7] Not only has General Parts failed to demonstrate clear error in the Magistrate Judge's removal of Subparts 3 and 4 from the Notice of Deposition, but General Parts' own representations to the Court indicate its substantial agreement with the Magistrate Judge's decision. Five days after the hearing on the Motion to Quash and the Motion to Enforce, counsel for General Parts submitted a letter to the court. (Letter from David J. Goldstein to Hon. Steven E. Rau dated Mar. 27, 2013 [Doc. No. 55].) Attached as exhibits to the letter were proposed revisions to the Notice of Deposition and a document showing the redlined comparison between the original and revised notices. (Id., Exs. A–B.) Among other changes, the revised notice completely eliminated the original Subpart 3 and replaced it with a request for information regarding the contact information for Perry's present and former supervisors and subordinates. (See id.) The revised notice also eliminated much of the detail requested in the original Subpart 4. (See id.) In other words, General Parts' own proposed revisions eliminated, for the most part, the subparts that General Parts now seeks to enforce through its objections.